THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOE WILLIE BROWN, Defendant-Appellant.

First District (1st Division)    No. 79-641

Opinion filed October 20, 1980.

Fe Fernandez, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Edwin S. Bishop, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from the judgment of the circuit court, sitting with a jury, convicting the defendant, Joe Willie Brown, of the crime of murder.

The issues presented for review are: (1) whether the defendant was denied a fair trial when the court denied defendant's request to add a witness to his list of witnesses at the close of the State's case; (2) whether the defendant was denied a fair trial due to the prosecutor's comments during closing argument; and (3) whether the defendant was denied a proper sentencing hearing.

At trial, Elijah Scales testified that on May 18, 1978, he saw James Stamps in a parking lot at 2450 W. Monroe at about 8:30 p.m. He noticed that Stamps had a can of beer in his hand. He saw the defendant, who was also a friend of his, walk up to Stamps and ask him for some beer. Stamps and Scales walked a short way from the area and they were again approached by the defendant asking for some beer. When Stamps refused, the defendant walked away.

Scales and Stamps then returned to the area where they originally saw the defendant and where the defendant's brother was working on his car. The defendant again asked Stamps for some beer and was refused. According to Scales, Brown grabbed Stamps by the collar, swore at

Stamps for refusing him some beer, stabbed Stamps in the stomach and then repeated stabbing Stamps as he fell to the ground.

Scales stated he first saw the knife, which he described as a foot-long kitchen knife, when the defendant began stabbing the victim. Scales stated the victim was trying to avoid being stabbed by turning his body and using his hands to catch the defendant's hands. Scales saw the defendant stab the victim three times in the stomach. When the victim fell to the ground, the defendant squatted next to the victim and used the knife like a dagger to repeatedly stab the victim. Scales estimated the defendant stabbed the prone victim more than five times. When he finished stabbing the victim, the defendant walked toward the building at 2450 West Monroe, with the knife in his hand. Scales also testified that he did not see the defendant drink anything that day, but stated that the defendant's eyes did not look the same when he started to stab the victim.

Billy Stigler, the defendant's brother, testified that he was working on his car in the parking lot at 2450 West Monroe. Stigler had his head under the hood of his car when he heard the victim and the defendant "rumbling" behind the car. He looked up and saw the victim falling and the defendant stabbing the victim. Stigler stated that the defendant "kept on stabbing." Stigler also testified that while he was in the parking lot he did not see the defendant drink anything, but that the defendant looked "like a drunk man should."

A Chicago police officer testified next, that he and three other officers went to 2450 West Monroe at about 11:25 p.m. on May 18, 1978. The officers knocked on the door of apartment 101, and were admitted into the apartment by a woman. Upon entering the apartment, the officers saw the defendant asleep on a couch. The witness testified that he shook the defendant's shoulder and the defendant awoke immediately. The officer asked the defendant if his name was Joe Willie, and when the defendant replied that he was, the officer placed the defendant under arrest. The officer stated that although the defendant's hands were handcuffed behind his back, he did not have any difficulty getting into the back seat of the squad car.

The witness stated that the defendant's motor coordination was normal, that the defendant did not fall down or need assistance while walking and that the defendant did not stumble while walking up two flights of stairs at the police station, while handcuffed. The witness further testified that the defendant had an odor of alcohol on his breath, but he gave coherent answers to questions and did not slur his words. The witness stated that it was his opinion, based upon his experience, that the defendant, at the time of his arrest, was not intoxicated.

Dr. An testified that he examined the body of James Stamps in the early morning hours of May 19, 1978, and found 11 stab wounds. He

determined that death was caused by a stab wound to the heart and one of the intestines. After this testimony the State rested.

In a sidebar, after the above testimony, the following colloquy was had between the trial judge and defense counsel:

"COUNSEL: I'd like one other addition. I apologize to the court because of the type of witnesses.

THE COURT: You want to amend your witness list? Make your offer. I'm going to deny it.

COUNSEL: I would like to add one witness, Eloise Grant, who will also testify to the condition of the defendant prior to the occurrence, and I just found out her name.

THE COURT: Your motion to amend your list of witnesses will be denied for the reason that we are now in the middle of the trial. You have had ample opportunity to have these witnesses and have complied with the State's request for discovery. Your motion to amend is denied.

COUNSEL: I would like to make a short order of proof.

THE COURT: I don't need an offer of proof. You have had ample opportunity to have these witnesses named listed."

The trial continued, and during the defense case Joe Willie Brown testified on his own behalf. On May 18, 1978, he worked from 7 a.m. until 3 p.m. During the time he was working he drank one-half pint of Canadian Club and did not eat all day. When he arrived at home at about 3:30, he met his cousin who gave him two 10 mg. valiums, which he took. He then went in the house and drank some beer. He walked to the liquor store with his younger sister, Lucy, and her boyfriend, where the three purchased two half pints of Night Train, which is 90 proof liquor. The defendant drank his, and some of his sister's liquor. After leaving the liquor store, sometime after 6 p.m., the defendant does not remember anything until he woke up in jail the next morning.

Lucy Stigler, the defendant's sister testified that she saw her brother outside the tavern at about 6 p.m. Joe drank a pint of Night Train and was "pretty under there." Brown left Stigler's company at about 7 p.m. The next time she saw her brother was at 9 p.m. at a friend's apartment and she testified that he was "out of it."

Annie Mae Mathias, the defendant's sister, testified that she and her mother were sitting in the yard at about 6 p.m. when they saw Joe. During the time Joe was in their presence she saw him drink beer and he appeared to be intoxicated. She said she could not understand her brother's conversation because he was drunk. She also testified that her brother takes valium.

Roberta Brown, the defendant's mother, testified that she had seen her son at about 3:30 p.m. on the day in question and that he appeared to

be intoxicated. She said she saw him again at a time between 8 or 9 p.m. in the yard of their apartment building and that she saw him drinking. After 8 p.m. she did not see her son again until after 10 p.m. when she saw him in jail. According to the witness, her son has been taking pills for about four or five years and he does not act normally when he takes them.

Elijah Scales also took the stand as a defense witness. He testified that when he saw Joe Willie Brown shortly before the offense on the evening in question, Brown looked in a drugged condition. According to Scales, Brown was "out of it."

Alma Mathias, also a sister of the defendant, testified that at approximately 9 p.m. on the evening in question, she saw her brother leaving the apartment. His eyes looked "bucked" and "strange" and it frightened her. She said she had never seen him look like that before.

Rose McClellan testified that she saw the defendant at about 4 p.m. on the date in question and that he was in a drugged state. Late in the evening he came to her apartment and he was in a similar condition. When he entered her apartment he had two valiums in his hands which she saw him take. He then sat on her couch and fell asleep. Shortly after he fell asleep, one of his brothers stopped by and knocked on the door. The defendant slept through that. Later, the police came and knocked and the witness admitted them into the apartment. The police shook the defendant in order to wake him, and then flashed a light in his face before he woke up.

During closing argument the prosecutor called the defense witnesses' version of what had happened "baloney," because they had to think up a justification for what occurred, and because of contradictions in their testimony. After the jury's deliberations the defendant was found guilty of murder.

At a sentencing hearing on September 12, 1978, the defendant argued in mitigation that the defendant only had one prior misdemeanor conviction. After the hearing the defendant was sentenced to 30 years in the State penitentiary. It is from this finding and sentence that defendant now appeals.

The defendant claims he was denied a fair trial when the trial court denied his request to add a witness to his list of witnesses. In response, the State claims the exclusion of Eloise Grant's testimony was a permissible sanction under Supreme Court Rule 415(g)(i) (Ill. Rev. Stat. 1977, ch. 110A, par. 415(g)(i)), for defendant's failure to use diligence in complying with discovery.

Defense counsel filed his appearance on June 5, 1978, and filed defendant's initial answer to discovery on June 9, 1978, listing two alibi witnesses. Defendant also filed an amendment to that answer on June 9, 1978, in which he added four alibi witnesses and corrected the names of

the first two alibi witnesses. The trial commenced on July 27, 1978, and a jury was impaneled on that date. On July 28, 1978, prior to opening statements, the defendant requested permission to amend his answer to discovery by substituting the defense of intoxicated or drugged condition (Ill. Rev. Stat. 1977, ch. 38, par. 6—3), while striking the defense of alibi. Leave was granted defendant to amend.

The trial continued with the parties making their opening statements and the State presented the testimony of four witnesses. After a recess until 1:30 p.m. that same day, the State presented their final two witnesses. In a sidebar following the testimony, the State indicated they were ready to rest their case in chief. At this point, defense counsel requested to amend defendant's answer to discovery by adding Eloise Grant as a witness. This motion was denied.

Although defense counsel stated, when he attempted to add Grant's name to defendant's list of witnesses, that he "just found out her name," defense counsel was engaged in defending his client throughout the day on July 28, 1978, with the exception of a short noon hour recess. It is unlikely that he could have learned of Grant's name while engaged in the trial. Conceding the unlikely possibility that defense counsel could have learned of Grant's name during the recess or during the morning's trial, the fact remains that he did not make known his intent to use Grant as a witness until the recess was over and the State had presented two additional witnesses and had concluded their case in chief. In fact, the trial judge, in denying the motion, stated:

> "Your motion to amend your list of witnesses will be denied for the reason that we are now in the middle of the trial. You have had ample opportunity to have these witnesses and have complied with the State's request for discovery."

■■ Such exclusion is within the discretion of the trial court, whose discretion will only be reviewed upon defendant's shjowing of prejudice (*People v. Brown* (1976), 41 Ill. App. 3d 641, 354 N.E.2d 602). Here, the defendant did not show that he was prejudiced by the trial judge's ruling. Defense counsel's only comment was that Eloise Grant would testify as to the condition of the defendant prior to the occurrence.

One of the postulates of criminal law is that no act can be the basis of criminal guilt, unless the actor who performs it has the ability to, and in fact, formulates the necessary intent. Where an offense requires a specific intent such as murder (*i.e.*, knowledge that the act creates a strong probability of death or great bodily harm), intoxication may constitute a defense, but only when the intoxication is so extreme as to suspend all reason. *People v. Pickerel* (1975), 32 Ill. App. 3d 822, 336 N.E.2d 778; *People v. Tillman* (1963), 26 Ill. 2d 552, 187 N.E.2d 731.

■■ The record clearly reveals the defendant's state of intoxication did

not prohibit him from knowing his acts would probably cause death or great bodily harm, even though five people testified, as defense witnesses, as to the intoxicated condition of the defendant prior to the stabbing. The testimony of Eloise Grant thus may have properly been considered as cumulative, and therefore was properly excluded. See *People v. Eilers* (1974), 18 Ill. App. 3d 213, 309 N.E.2d 627.

A complete review of the entire record reveals the defendant talked to the victim, understood the victim refusing to give him some beer and reacted angrily and violently to that refusal. Also, the defendant demonstrated an awareness of the situation by leaving the scene with possession of the weapon, a foot-long knife. The defendant was walking around and was not stumbling. He could talk. Witnesses and other people could understand what he said. In addition, the police officer who arrested the defendant testified that about three hours after the murder, the defendant had no difficulty walking, getting into a squad car or walking up stairs, although his hands were handcuffed behind his back. He was alert and aware. In the officer's opinion, he was not intoxicated.

Considering the overwhelming nature of the evidence substantiating the jury's determination of guilt and in view of the nature of Eloise Grant's testimony, we find the defendant has failed to show the trial court abused its discretion in imposing discovery sanctions. See Ill. Rev. Stat. 1977, ch. 110A, par. 415(g)(i).

In a related issue, the defendant claims the trial court erred in denying defendant the opportunity to present an offer of proof as to the nature of Eloise Grant's testimony.

The record reveals counsel for the defendant was allowed extensive amendments to discovery responses, just prior to trial. Even on the very day of trial the defendant amended his answer to discovery by substituting the defense of alibi with the defense of intoxication. On the afternoon of that same day, after the State had rested, defense counsel asked to add a witness to his list of witnesses. The court directed counsel to make his offer, but it would be denied. Counsel stated that Ms. Grant would testify as to the condition of the defendant and the court denied counsel's motion to amend. Counsel asked to make an additional offer of proof, which was denied.

Although it is generally improper to deny an attorney the right to make an offer of proof in a given matter, the gravity of the mistake must be considered in relation to the facts of each case. (See *People v. Greeley* (1958), 14 Ill. 2d 428, 152 N.E.2d 825.) In the case at bar, the overwhelming weight of the evidence was that the defendant was not intoxicated to such a degree so as to prohibit him from forming the requisite intent. Because of the overwhelming weight of the evidence, this court must consider whether the error was harmless.

■■ The law in Illinois on harmless error is well established. The object of review is not to determine whether the record is free from error, but to ascertain whether a just conclusion has been reached, founded upon sufficient evidence, after trial in which no error prejudicial to the accused has occurred. (*People v. Mathis* (1977), 55 Ill. App. 3d 680, 371 N.E.2d 245.) In the case at bar, the court could have surmised that Ms. Grant's testimony would be cumulative since it would have concerned the defendant's condition, and used that as a basis of its denial. This is true because of the nature of the defense of intoxication and because of counsel's comment that Ms. Grant would testify as to the condition of the defendant. In addition, the trial court allowed defense counsel great latitude in amending his response for the State's request for discovery. And, of utmost importance, the evidence against the defendant was overwhelming. In view of these facts, we find the error, if any, committed by the trial court was harmless.

The defendant also claims he was denied a fair trial due to the prosecutor's comments during closing argument.

In closing argument, the prosecutor told the jury:

"Ladies and gentlemen, I will paint you a picture. I want to paint a picture for you of James Earl Stamps in his grave, and there is no question that this man did it. I will tell you why people come up with that story about having a few drinks. When you have relatives who see somebody kill somebody in front of them, they have to think of a justification, a rationale that man couldn't have known what he was doing at that time. That is why they said it must have been the liquor. But that is baloney, because everything that has been told you here today, ladies and gentlemen, internally is inconsistent. The defense witnesses contradicted each other to make that rationale. Let's consider the valiums. The defendant only got the valiums and initially took them right away. There is another defense witness who says moments before the police came, the defendant took two valiums over there. The defendant told you he never got those two valiums."

In closing argument the State's Attorney can discuss the witnesses and their credibility. *People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.

■■ As discussed previously, the record reveals numerous facts leading to the conclusion that the defendant was lucid enough to have the requisite specific intent with regard to the murder of James Stamps. Since there were inconsistencies in the testimony in this respect, the prosecutor could properly draw inferences from the inconsistent testimony and comment on the credibility of the witnesses, as well as their motives.

■■ Furthermore, the alleged prejudicial remarks of the prosecutor were

harmless, if error at all, since they could not have reasonably affected the result considering that the evidence was overwhelmingly against the defendant, and since his right to a fair trial, in view of the entire record, was not prejudiced. See *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340; *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766.

The defendant additionally claims he was denied his right to a proper sentencing hearing because the trial judge failed to specify the reasons that led to his sentencing determination.

■■ Defendant's sentence of 30 years for the murder of James Stamps was 10 years greater than the minimum sentence for that crime. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1), eff. Feb. 1, 1978.) Defendant's state of intoxication was voluntarily induced. He murdered the victim in a brutal manner merely because the victim would not give him a drink of beer. The victim was stabbed 11 times with a foot-long knife. The defendant stabbed the victim three times in the stomach area, and when the victim fell to the ground, the defendant squatted next to the victim and repeatedly stabbed him. Moreover, the defendant did not show that he was prejudiced by the judge's omission and there is no indication that the sentence imposed would have been different had the court specified its reasons for the sentence. The omission of procedures in a sentencing hearing, which amounts to a technical or formal error, without prejudice to the defendant, does not require remedying (*People v. Taylor* (1980), 82 Ill. App. 3d 1075, 403 N.E.2d 607). Furthermore, the defendant failed to object to the trial judge's omission, which would have allowed the judge to correct any error. Quite simply, the alleged error could have been obviated upon the making of an objection. Failure to object constitutes waiver of this issue on appeal (*People v. McCrimmon* (1967), 37 Ill. 2d 40, 224 N.E.2d 822, *cert. denied* (1967), 389 U.S. 863, 19 L. Ed. 2d 131, 88 S. Ct. 120), and therefore plaintiff's request for another sentencing hearing would have been denied regardless of whether error occurred at the sentencing hearing.

For the above and foregoing reasons, the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.