THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY J. THOMPSON, Defendant-Appellant.

First District (5th Division)    No. 78-1633

Opinion filed February 6, 1981.

Arthur H. Zimmerman, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Susan Ruscitti Grussel, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of two counts of aggravated battery and sentenced to a term of two to six years. The sole question presented on appeal is whether guilt was proved beyond a reasonable doubt.

William McHateer testified for the State that in response to a telephone request of defendant (his brother-in-law) he went to the latter's warehouse located at 3725 West Lawrence Avenue; that defendant, Brian Lamp (also a brother-in-law of defendant) and three or four other individuals were in the warehouse when he arrived; that later he also saw Ralph Dyson hiding behind a parked car in the warehouse; that when he asked Dyson why he was hiding, he (McHateer) was knocked down when hit by a pipe from behind, following which he saw defendant standing directly over him holding a 3-inch pipe; that defendant then drew a "two-shot chrome barrel pearl handle derringer" which he had seen in defendant's possession on other occasions; that defendant pointed the gun at him and told Lamp to crush his head with the pipe; that as he (McHateer) started to leave, defendant pointed the gun at him and pulled the trigger but it did not fire; that as he started to run away, defendant shot him in both legs; and that Dyson drove him to the hospital. McHateer admitted that at the preliminary hearing and before the grand jury he said the warehouse was located at 3737 West Lawrence.

A police officer testified that when he saw McHateer at the hospital on the day after the shooting, both of his legs were bandaged.

Brian Lamp testified as a defense witness that on the evening of the shooting he had a telephone conversation with McHateer, whom he had known for four years, during which McHateer agreed to meet defendant at the latter's warehouse; that when he arrived there, Lamp threatened to beat him up because of money Lamp claimed he owed and because Lamp said he was responsible for putting his (Lamp's) sister in a psychiatric ward; that McHateer pulled out a derringer and, during a struggle for its possession, Lamp heard a "pop"; that he took the gun away from McHateer and later observed him walking across the street without any visible sign of injury.

Defendant testified that he did not shoot McHateer and that he was playing cards with Raymond Anderson and William Booth from 3 p.m. on the day of the shooting until 7 a.m. the next morning (the shooting having occurred at about 11 p.m.). Anderson and Booth also testified to playing cards with defendant during those hours.

Defendant was found guilty of two counts of aggravated battery but not guilty of intimidation.

OPINION

■■ Concerning defendant's contention that proof of his guilt was not established, we note that a reviewing court will not disturb a finding of guilt unless the evidence is so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt of guilt (*People v. Curry* (1973), 56 Ill. 2d 162, 306 N.E.2d 292), and that the positive and credible testimony of a single witness is sufficient to support a conviction (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819), notwithstanding contrary evidence by the accused (*People v. Sullivan* (1970), 46 Ill. 2d 399, 263 N.E.2d 38) or from alibi witnesses (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64).

■■ Defendant argues that inconsistencies and contradictions in the testimony of McHateer, the sole occurrence witness for the State, were such that the evidence should be considered so unsatisfactory as to leave a reasonable doubt of his guilt. He first refers to an inconsistency concerning the warehouse address. At trial, McHateer gave its correct address of 3725 West Lawrence, but he had testified before the grand jury and at the preliminary hearing that it was located at 3737 West Lawrence. Defendant maintains this is a material variance because Lamp said that the shooting took place in front of the paint shop which was located at 3737 West Lawrence. As stated in *Sparling v. Peabody Coal Co.* (1974), 59 Ill. 2d 491, 498-99, 322 N.E.2d 5:

"The rule in this State and generally is that the contradictory testimony of a witness does not *per se* destroy the credibility of the witness or the probative value of his testimony, and it remains for the trier of fact to decide when, if at all, he testified truthfully."

Here, McHateer testified that he did not know the exact numeral address of the warehouse until "sometime after the shooting," and it appears his testimony otherwise is consistent to the extent that on each occasion he said the shooting took place at defendant's warehouse and he testified at trial to its correct address. In view thereof, we are of the belief that the address variance was at most only a slight discrepancy—having little effect on the witness' credibility.

Secondly, defendant contends there was a significant variance between McHateer's trial testimony that the shooting took place inside the warehouse and "his prior testimony that the incident happened in an alley." We disagree. The prior testimony defendant refers to is in the following colloquy during the cross-examination of McHateer:

"Q. Did any portion of this transaction of the early morning hours of April 20th and the late evening hours of April 19th occur in the alley?

A. Well, the word, alley, I saw in the transcript but I did not say that. I saw it myself.

Q. So whoever the court reporter was at the preliminary hearing was incompetent?

A. Made a mistake. It was a verbal mistake."

This dialog, however, does not inform us as to the substance of any prior testimony of McHateer regarding the location of the shooting nor does it contradict his trial testimony concerning the place of the shooting. In fact, it refers only to "any portion of the transaction" and not to the shooting. Moreover, as it appears above, McHateer said that the word "alley" appearing in the transcript was a mistake of the court reporter—who was not produced to state otherwise.

Thirdly, defendant suggests that McHateer contradicted himself as to the ownership of the gun involved in the shooting. In support thereof, he points to Lamp's testimony that McHateer "pulled out the gun" and gave a description of the gun as a "two-shot chrome barrel pearl handle derringer" together with a detailed explanation of the gun's safety system. This, he argues, shows that it was McHateer who owned the gun rather than defendant. We note, however, that the trial court gave little credence to Lamp's testimony, stating that he "committed perjury with a very improbable tale of a shooting * * *" and that McHateer testified his knowledge of the gun was from seeing it on a number of prior occasions and from his reading about guns in the Popular Mechanics magazine.

In the light thereof, we see little merit in defendant's argument that McHateer contradicted himself as to the gun ownership.

Further, defendant contends McHateer's testimony that he did not know Brian Lamp (who, like McHateer, was a brother-in-law of defendant) "amounts to forcing a conscious falsehood upon the court." Concerning McHateer's knowledge of Lamp, the record discloses only the following colloquy during his cross-examination:

"A. * * * I don't know Mr. Lamp or where he lives or anything about his sister, sir.

Q. You don't know him?

A. I don't know where he lives. I don't know that much about him. I probably haven't set eyes on the man in two years."

It appears from this colloquy that McHateer knew Lamp but was not well acquainted with him, and thus we reject defendant's contention that McHateer falsely testified that he did not know Lamp.

Finally, defendant argues that the State's failure to call Ralph Dyson as a witness gives rise to an inference that his testimony, had he been called, would have been unfavorable to the State's case. We disagree. In *People v. Jimerson* (1979), 69 Ill. App. 3d 403, 412, 388 N.E.2d 10, 16, the court stated:

"As a general rule, if a potential witness is available and appears to have special information relevant to the case, so that his testimony would not merely be cumulative, and the witness' relationship with the State is such that he would ordinarily be expected to favor it, the State's failure to call that witness at trial *may* give rise to a permissible inference that the witness' testimony, if he had been called, would have been unfavorable to the State's case. McCormick on Evidence §272 (2d ed. 1972); 2 Wigmore on Evidence §§285-89 (3d ed. 1940); 29 Am. Jur. 2d *Evidence* §§180-87 (1967); see *United States v. Tucker* (7th Cir. 1977), 552 F.2d 202."

(See also *People v. Deskin* (1978), 60 Ill. App. 3d 476, 376 N.E.2d 1086.) However, the failure of the State to call all occurrence witnesses does not raise such an inference where one eyewitness does testify directly to the event and his testimony is clear and convincing. *Deskin; People v. Rowe* (1977), 45 Ill. App. 3d 1040, 360 N.E.2d 436.

Here, we believe no such negative inference was raised because, notwithstanding a minor discrepancy as to the warehouse address, McHateer gave clear and convincing evidence as to the occurrence. He testified that after he was struck from behind by a pipe in the warehouse, he observed defendant standing directly over him holding a 3-inch pipe; that defendant pulled out a derringer and pointed it at him; and that, when

he started to run away, defendant shot him in both legs. This testimony was corroborated in part by a police officer who observed that both of McHateer's legs were bandaged on the day after the shooting. Moreover, the name and address of Dyson was supplied to the defense in an answer by the State to the discovery request 13 months prior to trial. No negative inference is raised by the failure to call a witness who was also known and available to defendant. *People v. Mayfield* (1979), 72 Ill. App. 3d 669, 390 N.E.2d 1315; *People v. Lee* (1975), 33 Ill. App. 3d 45, 337 N.E.2d 381.

In the light of our conclusions as set forth above, we are unable to say that defendant's guilt was not established beyond a reasonable doubt and, accordingly, we affirm the convictions.

Affirmed.

LORENZ and MEJDA, JJ., concur.