THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER N. DAHL, Defendant-Appellant.

Fourth District    No. 4—82—0128

Opinion filed November 15, 1982.

Luedtke, Hartweg & Turner, of Bloomington (Darrell L. Hartweg, of counsel), for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and James K. Horstman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

Defendant was convicted in the circuit court of McLean County of the offense of theft of property exceeding $150 in value in violation of section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)). He was sentenced to 12 months' probation and 21 days in the McLean County jail and ordered to make restitution in the amount of $191.

No issue of reasonable doubt is raised, but a brief recapitulation of the facts is in order so that the issues which are raised concerning search and seizure may be more easily understood.

The alleged theft was that of electricity from the Illinois Power Company, the utility which supplied service to defendant's residence in Bloomington. Electrical service to the residence was underground and led from a transformer at the rear and off of defendant's premises. Defendant had been employed as a lineman for another utility for about nine years; his principal duties during that time were to hook up overhead wires, but he had done some underground work. In November 1980 a meter reader for the Illinois Power Company noticed that the billing meter on defendant's house was upside down. As a result of obtaining this information, Illinois Power Company caused a check meter to be installed in the transformer on the service leading to defendant's residence. This was done on June 3, 1981. The check meter and the billing meter on the house were read periodically and the results were forwarded to the billing department of the company. At trial it was established that for the period June 3, 1981, through August 6, 1981, the check meter showed 5,144 and the billing

meter showed 1,407 as the number of kilowatt hours used. The value of the discrepancy was established at $191, not including taxes.

During the period from June to August of 1981 a customer supervisor for the Illinois Power Company conferred with an assistant State's Attorney of McLean County concerning the situation at defendant's residence. The supervisor had been a witness for the State in a previous case of the same nature. Among other things, the supervisor told the assistant State's Attorney that the company had installed the check meter and was conducting an investigation into the situation; he inquired about what evidence was needed for criminal prosecution and how to go about obtaining it. The assistant advised that in order to enter the residence it would be necessary to obtain a search warrant. On August 5, 1981, the supervisor told the assistant State's Attorney that on the next day, August 6, the company intended to go upon defendant's premises and dig up the underground service to ascertain if it were being tapped with a bypass device. The assistant advised him that the company had the right to do this and that if anything were found, to call him so that a search warrant might be obtained.

Illinois Power Company personnel went to defendant's premises on August 6. They first disconnected the billing meter and found that the check meter continued to register usage and that a porch light on the residence remained burning. They then excavated the service line into the house and cut it, whereupon the porch light went out. A second hole was dug nearer to the house at the general location of the billing meter and at that place wires branching off from the service were discovered. Company officials then went to the State's Attorney's office where the assistant prepared an application for search warrant. It specified that the items to be seized were the bypass connection on the incoming service line, the electrical equipment inside the house to which the bypass was connected, and the outside connections utilizing the bypassed electricity.

The assistant State's Attorney came to the premises with the police officer who was to serve the search warrant and viewed what was alleged to be the bypass. The warrant was served upon the defendant and the assistant authorized the detachment of the three wires which allegedly constituted the bypass, but further authorized the taking of pictures of the remaining items because to remove them would cut off all electrical service to the premises.

Defendant's motion to suppress the evidence obtained and to quash the search warrant was denied. He testified that he gave no consent to the placement of the check meter and no consent to the

entry and excavations upon his premises.

On appeal defendant's principal issue concerns the trial court's denial of his motion to suppress evidence, which he contends is error. Two additional issues are raised: (1) error in refusing to quash the search warrant when the warrant alleged theft of services and the ultimate charge was theft of property exceeding $150, and (2) error in admitting certain rate schedules of the Illinois Power Company. We find no error and affirm.

As to the issue of suppression, the position of the parties is straightforward: defendant claims that the participation of the assistant State's Attorney in the affair makes the search one by the government, the protection of the fourth amendment applies, and his rights were violated by the company's actions. The State argues that defendant lacked any expectation of privacy in the areas searched and hence there was no violation.

We believe that the answer is somewhat narrower than either contention: the Illinois Power Company was authorized by law to enter upon the premises and therefore either the participation of the assistant State's Attorney or the defendant's expectation of privacy are irrelevant.

The company's legal authorization stems from a portion of its tariff filing with the Illinois Commerce Commission. Pertinent portions of that filing entitled "Rules, Regulations and Conditions Applying to Electric Service" provide as follows:

"1. GENERAL INFORMATION AND REQUIREMENTS - Page 7

*1.4 Obligations of Customer*

1.41 By applying for or taking electric service from Utility, Customer grants to Utility the right to enter upon the premises to be served and to install or remove, repair or maintain thereon, its lines, meters and other facilities for the purpose of serving such Customer. Customer shall afford Utility's representatives free access to Customer's premises at all reasonable hours for the purpose of reading the meter, inspecting the metering and other equipment relating to Utility's service, repairing, testing or removing its meter and equipment, and at any time in case of an emergency.
* * *

4. SERVICE CONNECTIONS - Page 13

*4.6 Metering Equipment (continued)*
* * *

4.66 All meters, transformers, wires and other equipment in-

stalled by Utility at its own expense upon Customer's premises are the property of Utility. Under no circumstances shall any person other than a representative of Utility connect or disconnect any meter, connect to a meter or disturb any wiring between the meter and the service wires from Utility's distribution system after the meter has been installed. Seals will be placed by Utility on all meters or meter enclosures and connection cabinets or source side of meter and such seals shall not be broken or disturbed by anyone other than authorized representatives of Utility. Any infraction of this Rule may be considered sufficient cause for discontinuance of service."

■ These excerpts were offered into evidence at the hearing on the motion to suppress but were never ruled on by the trial court. In our opinion they were properly before the trial court and are properly before us. They are public records of a State agency and are subject to judicial notice on that basis. Compare *Department of Public Welfare v. Bohleber* (1961), 21 Ill. 2d 587, 173 N.E.2d 457; *Thurman v. Department of Public Aid* (1974), 25 Ill. App. 3d 367, 323 N.E.2d 502.

Illinois Power Company had the clear right to do what it did with or without the assistant State's Attorney. Undoubtedly he became the beneficiary of the search, but this cannot alter its legal nature. Defendant has cited *United States v. Mekjian* (5th Cir. 1975), 505 F.2d 1320, but it is clearly distinguishable. In that case a doctor was being prosecuted for filing false Medicare claims. His office nurse had been copying records and provided them to the FBI, whose agents told her to refrain from any further copying but did accept the copies already made. However, she continued to copy records and provide them to the authorities. The Fifth Circuit held the evidence inadmissible because of the government participation in and knowledge of the "misconduct." The court described the government as "the beneficiary of such misconduct." 505 F.2d 1320, 1327.

■ We have no quarrel with *Mekjian*. If the evidence is obtained through misconduct and the government acquiesces in it, the evidence should be suppressed. However, in the instant case there was no misconduct. Unlike the nurse who had no legal right to copy her employer's records, Illinois Power Company was empowered by its approved tariffs to enter upon defendant's premises and to remove any of its facilities. The fourth amendment has no application.

A Federal case more nearly parallel to the case at bar is *United States v. Clegg* (5th Cir. 1975), 509 F.2d 605. In *Clegg* a telephone company had reason to believe that its equipment was being bypassed

by means of what was commonly called a "blue box" and long distance calls were being made by the defendant without payment for them. Recording devices were placed on defendant's telephone line to ascertain that the calls were being made and were being made by him. The telephone company had kept the FBI informed of its investigations. The court held that under the totality of the circumstances the FBI's part was insufficient to make the search one by the government authorities and that the fourth amendment did not apply. The court said:

> "Rather, it is the case of a private, statutorily authorized investigation by the employee of a corporation intent upon protecting its property rights.
>
> The fact that United States law enforcement authorities were informed that the investigation was underway and that it had uncovered evidence of criminal activity does not automatically change its private nature." 509 F.2d 605, 609.

Other Federal cases reaching a similar result are *United States v. Manning* (6th Cir. 1976), 542 F.2d 685; *United States v. Harvey* (8th Cir. 1976), 540 F.2d 1345; *United States v. Auler* (7th Cir. 1976), 539 F.2d 642; *United States v. Goldstein* (9th Cir. 1976), 532 F.2d 1305.

Defendant's second issue concerns the application for a search warrant. The application stated that the materials to be seized were believed to constitute evidence of the offense of "theft of services." Defendant was ultimately indicted for theft of property over $150 in value. He maintains that this is a fatal variance and that the warrant should have been quashed.

Section 108—3(a)(1) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 108—3(a)(1)) provides:

> "(a) Except as provided in subsection (b) ***, any judge may issue a search warrant for the seizure of the following:
>
> (1) Any instruments, articles or things which have been used in the commission of, or which may constitute evidence of, *the offense in connection with which the warrant is issued.*" (Emphasis added.)

Defendant's interpretation of this section is, in our opinion, overly technical. The common sense interpretation of the section is that it is intended to prevent a fishing expedition by the police. This is indicated by the Committee Comments to section 108—1 (Ill. Ann. Stat., ch. 38, par. 108—1, Committee Comments, at 11 (Smith-Hurd 1980)). While that section deals with search without a warrant, the rationale remains the same.

■ In the instant case the application concerned theft and the ul-

timate indictment was for theft. It was not a case of obtaining a search warrant under an allegation of theft and returning articles seized which would support a charge of drug possession or arson. The specificity demanded by defendant is contrary to logic and reason. His argument is without merit.

Defendant's final contention concerns the admission of certain rate schedules of Illinois Power Company. This occurred during the trial testimony of a supervisor for the company who was called to testify as to the value of the electricity stolen. His testimony was objected to for lack of foundation. The witness stated that a rate increase had gone into effect in July 1981, midway during the period of investigation of defendant. He stated that he would require the rate schedules for the pre-July period as well as the post-July period in making an accurate answer. On motion of the State a recess was granted by the trial court and the witness repaired to his office and returned with the schedules. These were offered into evidence by the State to support the supervisor's calculations, but defendant objected on the basis that they had not been included in the State's answer to his discovery motions. The trial court overruled the objection.

■ The regulation of discovery under Supreme Court Rule 412(a)(87 Ill. 2d R. 412(a)) and sanctions for its violation are within the sound discretion of the trial court. (*People v. Galindo* (1981), 95 Ill. App. 3d 927, 420 N.E.2d 773.) Failure by a defendant to request a continuance when evidence not contained in the State's answer to discovery is submitted is generally considered a waiver of the claim of surprise. (*Galindo; People v. Nelson* (1980), 92 Ill. App. 3d 35, 415 N.E.2d 688.) In the case at bar defendant made no motion for continuance and has failed to show any prejudice. There was no abuse of discretion and defendant has waived the matter.

For all the foregoing reasons, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

GREEN, P.J., and LEWIS, J., concur.