(No. 59787.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN GORNEY, JR., Appellee.

*Opinion filed July 17, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Edward F. Petka, State's Attorney, of Joliet (Mark L. Rotert and Marcia L. Friedl, Assistant Attorneys General, of Chicago, and John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Thomas A. Lilien, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE WARD delivered the opinion of the court:

John Gorney, Jr., 17 years old, was convicted of home invasion (Ill. Rev. Stat. 1979, ch. 38, par. 12—11), attempted rape (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(a), 11—1(a)) and aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(2)) following a jury trial in the circuit court of Will County. He was sentenced to concurrent terms of imprisonment of 14 years for home invasion, 5 years for attempted rape and 5 years for aggravated battery. The appellate court reversed and remanded for a new trial. (121 Ill. App. 3d 260.) We granted the State's petition for leave to appeal under our Rule 315 (87 Ill. 2d R. 315(a)).

The victim, age 26, testified that she and the defendant lived in the same neighborhood in Joliet and were acquaintances. On October 16, 1981, she and her four children had just returned from vacation a few days earlier than scheduled. They returned ahead of time at the request of her husband. She put the children to bed and went to her room where, lying face down, she fell asleep around 11:15 p.m. She was awakened by a hand placed across her face and a knee pressed into her back. She testified that she was told not to move or scream or she would be killed. The hand and knee were then removed

and she heard the sound of clothes being unzipped. She turned over, hoping to free herself, but her assailant kept her pinned to the bed with his legs. She testified that he had a nylon stocking over his head, which she tore off when he reached to pull down her nightgown. She recognized the defendant, and when she screamed his name he struck her in the face. Her two daughters came to the bedroom door and the victim shouted that they should phone the police. Kimberly, her 10-year-old daughter, corroborated her testimony. Kimberly testified that she and her sister woke up when they heard their mother scream and, when Kimberly reached her bedroom, she saw a man standing over her mother. Following her mother's direction, Kimberly ran to a neighbor's house and asked that the police be called.

The victim's husband testified that on that night he was working the second shift at the Caterpillar Tractor plant, as he had for the preceding two years. He said that the shift ended at 11:30 p.m. and he always returned home between 11:45 and 11:50 p.m. A second-floor light was on as he approached his house around 11:45 p.m. that night and, when he entered the house, he heard his wife screaming on the second floor. As he ran towards the stairs he noticed that the living room window was open and the screen was pulled into the room. Upstairs he found Brandy, his eight-year-old daughter, crying. He looked into the bedroom and saw the defendant standing over the bed with his hand on his wife's throat. The husband rushed at and struggled with the defendant. The struggle continued down the stairs and into the living room, where the husband subdued Gorney and held him until the police arrived.

The testimony of deputy sheriff Nicholas Ficarello and evidence technician David Knutson showed that a screen covering the living room window had been cut and that a nylon stocking, which the complainant testi-

fied did not belong to her, was found on the bed. Knutson also stated that the defendant had a razor blade in his jacket's pocket. Ficarello testified that the victim had what was apparently an abrasion on her left cheek. Patrice Reiter, a nurse at Silver Cross Hospital, testified that the victim, who was brought to the hospital by the deputy sheriffs for medical treatment, had a bump on her chin and a reddened area along her arms.

Deputy sheriff Lee Carmichael testified that, at the sheriff's station, the defendant gave an oral statement in which he admitted he entered the victim's house by cutting the screen on a first-floor window. He said that he went to the victim's bedroom and placed a hand over her mouth, telling her not to scream or he would kill her. He testified that his intention was not to rape the victim but only to frighten her because she had complained to the Illinois Department of Children and Family Services about members of his family. The defendant admitted to the deputy sheriff that he had a stocking over his head while in the house. At trial, Gorney said he gave the statement to the deputy only to protect the victim because she had told him that earlier her husband had held a gun to her head and accused her of being unfaithful.

The defendant testified that he had sexual relations with the victim on a number of occasions while her husband was at work. He said that Colleen O'Hara was often in the victim's home on these occasions to babysit for the victim. He said that the victim had arranged earlier in the week to meet with him at 10 p.m. on the night of October 16. This was in contradiction to the victim's testimony that she had not planned to return home from her vacation until that afternoon, when her husband asked her to return home. Defendant testified that he arrived at the woman's house later than the arranged time, although he was unable to recall the exact time. He said that when he and she were undressing, with the

light off in the bedroom, they heard a car pull into the driveway. As he began to dress, the victim screamed. Gorney then fought with the victim's husband and was subdued in the living room.

Allison Gorney, the defendant's sister, testified that, prior to this incident, the victim had told her that she had sexual intercourse with the defendant. She also testified that she had seen the victim and her brother alone on the victim's porch on a number of occasions in the months preceding her charges against the defendant. James Sparks, a friend of the defendant, testified that he saw Gorney playfully carry the victim from a neighborhood party to her house and kiss her.

Colleen O'Hara testified in rebuttal and denied that she ever saw the defendant with the victim on those occasions which the defendant testified resulted in sexual relations.

The defendant sought to impeach the victim's credibility by introducing evidence of an incident that allegedly occurred five months earlier. Prior to the victim's taking the stand, defense counsel asked for a conference with the court and prosecutor for the purpose of discussing the admissibility of certain evidence that he proposed to introduce. He told the court that he anticipated that the defendant and Judy Carnes, a neighbor, would testify as follows:

"There were a group of people standing on the porch. [The victim] was there, and John Gorney was there, Colleen O'Hara was there, Judy Carnes was there, and there were some speeders coming down the street, and one of the boy's names was Greg Bell (phonetic), and there was a discussion to call the police, and then [the victim] stated that she should call the police and say that the Bell boy tried to rape her in order to get even with him, and then she said that John Gorney could rip her nightgown to make it look authentic."

After argument, the court ruled that the proposed evidence was inadmissible. The intention of defense counsel apparently was to cross-examine the victim and lay a foundation for her possible impeachment based on the above recital by counsel and then have the defendant and Carnes testify as indicated. He claims that the trial court erred and that the evidence would have supported his defense that he was in the victim's bedroom with her consent and that she fabricated the accusation of attempted rape to keep her husband from learning of their affair. He cites *People v. McClure* (1976), 42 Ill. App. 3d 952, and *People v. Alexander* (1983), 116 Ill. App. 3d 855, in support of his contention.

There is, of course, a right to cross-examine a witness to show prejudice or other factors which might influence testimony. The scope of cross-examination rests within the discretion of the trial court, and its ruling will not be disturbed on review unless there has been an abuse of discretion resulting in manifest prejudice to the accused. (*People v. Owens* (1984), 102 Ill. 2d 88, 103; *People v. Kline* (1982), 92 Ill. 2d 490, 504.) Too, the admissibility of evidence is within the sound discretion of the trial court, and a reviewing court will not substitute its judgment on admissibility absent a clear showing of abuse. *People v. Ward* (1984), 101 Ill. 2d 443, 455-56; 9 Wigmore, Evidence sec. 2550, at 640 (Chadbourn rev. ed. 1981).

We judge that the trial court did not err. The trial of a cause is not to be governed by a mechanical application of rules, and a court of review should not be superficial and quick in concluding that a trial court, which had the opportunity of observing the entire course of the trial and seeing and hearing witnesses, abused discretion in considering a question entrusted to its discretion. In light of the vagueness and the incompleteness of description of the proposed testimony, the trial court may well

have concluded that the proposed evidence would not have been of probative value. A trial court may exclude evidence when its relevancy is so speculative that it is of little probative value. (*People v. Lynch* (1984), 104 Ill. 2d 194; *People v. Manion* (1977), 67 Ill. 2d 564; *People v. Mikel* (1979), 73 Ill. App. 3d 21.) Looking to the record, there was no improper restriction on the defendant's right and opportunity to present his defense. His evidence presented his version of the incident. He was allowed to testify in detail about it and his claims of having had relations earlier with the victim. The defendant's sister testified to claimed admissions of the victim that the defendant and she had had relations, and Spark's testimony, if accepted, indicated an intimate relationship between the victim and the accused. The case presented by the defendant, if believed, could have allowed the jury to accept his claim that the victim had invited him to her home that night and had later falsely accused the defendant. The defendant's conviction was not based, of course, on the victim's testimony alone. There was corroborative testimony by her husband, her daughter, the nurse and police officers. Contradicting the defendant's testimony was the physical evidence of a violent attack. There was the oral statement given by the defendant to the deputy. There were circumstances striking at the credibility of the defendant's testimony: the forced entry into the victim's home; the cut screen and the razor blade found in the jacket of the defendant; the stocking found on the bed. There was the complete improbability of the victim arranging for a tryst at a time when her husband would be returning from work. There was the impossibility of her having arranged earlier to meet the defendant that night, as he claimed, when, as her testimony showed, her vacation plans called for her and the children to be away from home.

Having said that, we must state that in the absence

of the compelling evidence here it well might have been error to reject the proposed testimony. Evidence of prior false accusations of rape by the victim may be admissible, and though here no false charge actually was brought, a trial judge might have considered the testimony relevant and probative. We would add that even if the proposed testimony here was erroneously excluded, we would deem that under the evidence of guilt presented the error was harmless.

It is the responsibility of the jury to determine factual questions, to assess the credibility of witnesses, and to consider the sufficiency of the evidence for conviction. (*People v. Yates* (1983), 98 Ill. 2d 502; *People v. Davis* (1983), 95 Ill. 2d 1.) A court of review will substitute its judgment for that of the finder of fact only when the evidence is such that when considered on review there is a reasonable doubt as to the guilt of the accused. (*People v. Williams* (1982), 93 Ill. 2d 309.) We do not have that doubt.

For the reasons given the judgment of the appellate court is reversed. Because of the disposition made of the appeal by the appellate court, there were issues that court did not find it necessary to address. The cause is remanded to the appellate court for consideration of those issues.

*Reversed and remanded,*
*with directions.*