THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TONY BOCK *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—88—2642, 1—88—2664 cons.

Opinion filed February 19, 1993.

Rita A. Fry, Public Defender, of Chicago (Frederick Weil and Vicki Rogers, Assistant Public Defenders, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Howard Weisman, and Ronald Tulin, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

After a joint trial before separate juries, defendants were found guilty of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(a)) and unlawful restraint (Ill. Rev. Stat. 1987, ch. 38, par. 10—3(a)). The trial court vacated the finding on the unlawful restraint charge and sentenced both defendants on the aggravated criminal sexual assault charge. Defendant Bock received a sentence of nine years, while defendant Fialkowski received a sentence of 12 years.

On appeal, both defendants contend: (1) the State's numerous violations of discovery rules and improper comments during trial denied them their right to a fair trial; (2) the trial court erred in denying the defendants the opportunity to introduce evidence or cross-examine the complainant as to her previous complaints of rape; (3) the trial court erred in failing to instruct the juries regarding a mental state required for aggravated criminal sexual assault; and (4) the State failed to prove defendants guilty beyond a reasonable doubt of aggravated criminal sexual assault. In addition, defendant Fialkowski contends that by conducting a joint trial before separate juries, he was denied his right to a fair trial. For the following reasons, we affirm.

FACTS

Defendants Bock and Fialkowski were both charged by indictment with aggravated criminal sexual assault, unlawful restraint and robbery. Prior to trial, counsel for defendant Bock presented a motion for

severance. Defendant Fialkowski's counsel, although present at the hearing on Bock's motion, did not present his own motion. The court, rather than granting Bock's motion, determined to try the case with two juries which would hear the testimony of all the State's witnesses, with the exception of any testimony regarding statements made by a defendant. In addition, closing arguments, which could contain references to such statements, would be made to each jury separately.

The State's first witness was the complainant, T.S. She testified that in September of 1987, she was employed as a bartender at a restaurant in Chicago. On September 10, she finished working for the day at approximately 1 a.m. and, after having dinner with her boyfriend and then dropping him off at his home, she went to a bar called City Limits, where she had previously worked. She arrived at City Limits at about 2:30 a.m. and ordered a drink.

T.S. testified that defendant Fialkowski, whom she knew by the name Red, was at City Limits. T.S. knew Fialkowski because he had lived in the same neighborhood as T.S.'s sister. T.S. testified that she had not seen Fialkowski for seven years. In the course of their conversation, Fialkowski asked T.S. for a ride home. Fialkowski also introduced T.S. to his friend, defendant Bock, and asked if he could have a ride too.

T.S. said that she and the defendants went out to her car, and they directed her to an alley near 34th and Western. She parked the car near a trailer, and the defendants got out of the car. She remained in the car and talked with Fialkowski through the driver's side window. Bock then walked up to the window and asked T.S. if she wanted to come inside the trailer. T.S. declined. At that point, Fialkowski jerked open the car door and pulled T.S. from the car by her hands and arms. Bock then grabbed her legs and they carried her, screaming, into the trailer and threw her onto a bed. T.S. testified that when she tried to get up, Bock struck her. When she asked why this was happening, Fialkowski told her to shut up.

T.S. testified that at the time, she was wearing a black jumpsuit, underwear, bra, and shoes. Bock pulled her jumpsuit off of her, tearing it in the process. Fialkowski was helping Bock to remove her clothes. After all her clothes were removed, both defendants sexually assaulted her. Bock got on top of her and had sexual intercourse with her while Fialkowski held her arms. Fialkowski then began to fondle her breasts and attempted to insert his penis in her mouth. Bock then performed an act of oral sex on T.S. Bock also had vaginal intercourse with T.S. two more times. At some point during the occurrence,

Fialkowski left the trailer. T.S. said that when he returned, she heard her keys fall to the floor of the trailer.

T.S. said that after the defendants had finished assaulting her, she was allowed to leave the trailer, but could not find her car keys. A man came to the door of the trailer. T.S. answered the door and asked the man to give her those keys. According to T.S., his response was that she "deserved it."

T.S. stated that she eventually found her keys on the floor of the trailer. She then grabbed her shoes and jumpsuit and left the trailer. Outside, she noticed that her car was not parked in the same place as she had left it. She drove towards her sister's house, stopping on the way to put on her jumpsuit and shoes. Instead of going to her sister's house, T.S. flagged down a police car. As she was locking her car in preparation to go with the police officers back to the trailer, she noticed her bra and panties in the back of her car and the contents of her purse scattered on the front floor. She testified that $30 which she had with her earlier and her identification were missing. She also noticed that one of her pierced earrings was gone.

When T.S. and the police arrived at the trailer, Fialkowski was standing outside and Bock was coming out of the trailer. Both were arrested.

On cross-examination by Bock's attorney, T.S. reiterated that, when the man came to the door of the camper, she asked him to help her find her keys, but conceded that she did not say "help me, I'm being raped."

T.S. was also asked if she knew what "tick" was, to which she responded yes, it is PCP, an animal tranquilizer. Although she denied using it, she thought tick was usually snorted through the nose.

When cross-examined by Fialkowski's attorney, T.S. stated that when she first saw Fialkowski at City Limits, he was standing in the middle of the room and she walked over to him. She further agreed that Fialkowski never attempted to have sexual intercourse with her and did not overtly threaten her in any way.

On redirect, T.S. testified that Fialkowski did hold her arms while Bock sexually assaulted her which caused some bruises on her wrists. She also stated that he attempted to have oral sex with her.

Dr. Helene Connolly was the next witness for the State. She treated T.S. at the hospital the morning of September 10, 1987. Dr. Connolly testified that T.S. was emotionally very upset and had bruises on the back of her neck and both of her arms. According to Dr. Connolly, the bruises were recent. T.S. also had a cut on one of her arms. In addition, T.S. had an injury to her ear where a pierced

earring had been pulled through the earlobe. Dr. Connolly also performed a pelvic examination and prepared a Vitullo kit.

The State called Officer James Moylan of the Chicago police department as its next witness. At about 5:45 in the morning of September 10, 1987, he and his partner were flagged down by T.S., who told them she had been sexually assaulted. Moylan testified that she was highly upset, crying and stuttering. He observed marks on her elbows, wrists and forearms. T.S. directed the officers to the alley and the trailer where the assault had occurred, and the defendants were placed under arrest. Moylan testified as to what T.S. told him had occurred that morning, which was essentially the same as she had testified to at trial.

Later that day, Moylan examined T.S.'s car. It was very dirty and dusty. The dust on the hood was undisturbed.

At this point, the jury for defendant Bock was excused for the day. Only Fialkowski's jury heard the testimony of the State's next witness, Chicago police detective Thomas Ptak. Detective Ptak testified that when he interviewed T.S. at the hospital following the assault, she was very upset, was shaking and crying, and had bruises about the face, upper chest and upper back. She also had abrasions to both of her arms and a tear in her right earlobe.

Following his interview with T.S., Ptak spoke with Fialkowski at the police station. Fialkowski told him of meeting T.S. at the bar and asking her for a ride home for himself and Bock. On the way, T.S. asked him for some "tick," but Fialkowski said he did not have any.

Ptak further testified that Fialkowski stated he saw Bock and T.S. having sex on the hood of her car. Bock and T.S. then went into the trailer and Fialkowski watched them have sex from outside the trailer through the doorway and the window. He also saw Bock strike T.S. with his fists several times. After Bock and T.S. had sexual intercourse three times, T.S. began screaming that she wanted to get out of there. Fialkowski told Ptak that he entered the trailer at this point and restrained T.S. by grabbing her wrists, trying to calm her down. He took her out of the trailer and retrieved her clothes and keys.

Ptak stated that, based on Fialkowski's statement that Bock and T.S. had sex on the hood of T.S.'s car, he went to the police lot to examine her car. Although the car had "at least, one week's dirt all over it," the dirt was not disturbed.

On cross-examination by Fialkowski's attorney, Detective Ptak was asked about his reports concerning the assault. When he referred to a "major crime worksheet report," defendant requested a side bar. According to defense counsel, this was the first time he had seen that

report, and he asked that Ptak's testimony be stricken. The assistant State's Attorneys responded that it was the first time they had seen that report, and, in any event, everything in the major crime worksheet report was included in a supplementary report which had previously been given to defense counsel.

The court resolved the problem by directing that copies be made of both reports and given to the court reporter to include in the record. The court then excused Ptak, postponing further cross-examination of him until the next morning to provide an opportunity to defense counsel to review the officer's report.

The State called as its next witness Assistant State's Attorney Peter Fischer. He also spoke with T.S. at the hospital following the assault. He described her as very upset and crying. He observed numerous cuts and bruises about her face and arms. Fischer also examined T.S.'s car and noticed no smudges in the dirt and dust covering it.

Fischer also testified about his interview with Fialkowski at the police station. Fialkowski told him that he was sitting on a front porch at the home of a friend near 34th and Western when he saw Bock and T.S. drive up in a car. Fialkowski said that they got out of the car and T.S. proceeded to sit on the hood of the car while Bock performed oral sex on her. Fialkowski then walked up to the two of them, and after a brief conversation, the three of them drove to get gas and beer. Fischer further stated that Fialkowski told him that when they returned to the trailer, all three went inside and Bock and T.S. had sexual intercourse. At the end, Bock "got rough" with T.S. When T.S. left, Bock and Fialkowski cleaned up the trailer.

Prior to the resumption of testimony the following morning, the State moved to bar any reference to the discovery problem concerning Ptak's report. The court sustained the State's motion. The court denied a motion by Bock for a mistrial. The court also denied Bock's motion to bar any testimony by Ptak regarding any statements made by Bock.

The trial resumed with only the Bock jury present. The first witness for the day was Detective Ptak, who had previously completed his direct examination before the Fialkowski jury. He testified this time about his interview with defendant Bock. Bock told him that he had met T.S. at the City Limits bar. She approached him and asked if his name was Tony. In Bock's words, "she came on to him and asked him to get it on." According to Bock, he and T.S. left the bar in her car and went to his trailer. When they arrived, he put her on the hood of her car and had oral sex with her. They then went into the trailer

and had sexual intercourse twice. At this point, according to Bock, she began screaming for PCP. She then left.

Ptak testified that Bock said he was not with Fialkowski that night. Bock also said that what happened between him and T.S. was completely consensual.

Assistant State's Attorney Fischer was also recalled to testify before Bock's jury. Bock told him that he picked her up in a bar. They drove to his trailer, engaged in oral sex on the hood of her car, and then went inside the trailer and had sexual intercourse. According to Fischer, Bock told him that Fialkowski came into the trailer during the act. T.S. then expressed her desire to leave, which she did after finding her keys. According to Bock, he did not force T.S. to have sex with him.

Before both juries, the State called its next witness, Christine Anderson, a crime lab technician for the Chicago police department. She testified that her analysis of the Vitullo kit taken from T.S. at the hospital revealed the presence of sperm.

On cross-examination, she was asked whether she had done any tests on pubic hair combings or fingernail scrapings. Anderson answered that she did not because it was not requested by the State's Attorney's office. On redirect, over objection, Anderson was permitted to state that such requests may also come from defense attorneys.

Officer Ptak was then recalled to the stand to complete cross-examination before the Fialkowski jury. Ptak was asked about his major crime worksheet report. He admitted that the report did not say anywhere that Fialkowski told him that Bock was at the bar that evening with Fialkowski. Ptak also said that Bock told him he was not with Fialkowski at the bar.

At the close of the State's case, both defendants moved for directed findings of not guilty. The motions were denied.

Counsel for defendant Bock called his first witness, Augustine Lara, who lived near the trailer where the assault occurred. Lara testified that at approximately 4 a.m. on September 10, 1987, he was awakened by his dog's barking. When he looked out the window, he saw an unfamiliar car parked near his brother's car. He also saw two people, Bock and a girl. The girl was sitting on the trunk of Lara's brother's car, and the two were kissing. Lara testified that he did not see the girl struggling.

Bock's next witness was William Dilts, who also lived near the trailer. Dilts testified that he is Bock's brother-in-law. At 4 a.m. on September 10, 1987, Dilts was having coffee when Bock came in to get the keys to the trailer. About 20 minutes later, Dilts heard a wom-

an's voice coming from the trailer. When he went outside to check on the noise, T.S. and Bock came out of the trailer and T.S. said she had lost her keys. Dilts gave them a flashlight. Dilts testified that he then saw Fialkowski coming from T.S.'s car, saying he had found her keys. Bock also found a set of keys in the trailer.

Dilts stated that as T.S. walked to her car, she was neither crying nor yelling. Fialkowski walked her to the car and they talked for a few moments before she started the car and backed out.

Defendant Bock was called as a witness by Fialkowski's attorney. He testified that in the early morning hours of September 10, 1987, he was at the City Limits bar with a friend named Joey LaCoco. As he sat talking with LaCoco and a girl, T.S. came up to them. Bock testified that he had never seen T.S. prior to that date. They introduced themselves and Bock bought her a wine cooler. The four talked until closing at 4 a.m., when T.S. offered Bock a ride. As they sat outside the bar waiting for T.S.'s car to warm up, they began kissing.

Bock testified that when they got to the lot near his trailer, they were getting romantic and, because T.S.'s car was small, they got out of the car and T.S. sat on the trunk of another car parked nearby. He removed her clothes and had oral sex with her. T.S. did not protest.

Bock said that while they were having sex, Fialkowski walked up. When the neighbor's dogs started barking, T.S. put on her jumpsuit, and threw her underwear in the back of the car. While Bock and T.S. sat in the car talking, T.S. asked Fialkowski if he could get "dust" or PCP. When he said he could, Fialkowski got into the car and the three went to get gas and PCP. They bought gas and then returned to the trailer. The three went into the camper, but Fialkowski left almost immediately to get the PCP with $10 T.S. gave him. While he was gone, Bock and T.S. had sex again. Fialkowski returned, told T.S. that he could not get any drugs, and that he had lost her $10. Bock testified that T.S. got real upset and threw a wine bottle at him. Bock then hit her and she fell to the floor. After she got up and began ripping down the curtains in the trailer, Bock and Fialkowski tried to calm her down. She eventually did calm down, and after locating her car keys, T.S. left and Bock cleaned the camper.

Bock testified that when he had sex with T.S., she consented. He also testified that Fialkowski did not participate in any sexual conduct while Bock was present.

After both defendants rested, the prosecution informed the court and defense attorneys that it might call a rebuttal witness. The assistant State's Attorney said that she and her partner had "preliminarily pre-discussed" the possibility of calling a rebuttal witness, but wanted

to see what the defendant testified to at trial. According to her, they had no idea what the defendant was going to say. After a brief discussion, the State confirmed the intention of the prosecutors to call the rebuttal witness. There was no objection by either defendant at this point, nor did either defendant ask who the rebuttal witness would be or what the testimony would involve.

When trial resumed the following morning, however, both defendants objected to the State's calling its rebuttal witnesses. They argued that they were not aware of the existence of the witness until that morning and, as a result, had not had an opportunity to do any investigation. Fialkowski also argued that it was his understanding that the witness would testify to the fact that Fialkowski was at City Limits, which would be prejudicial to his case. Neither defendant requested a continuance, however. The court ruled that the witness would be allowed. In the court's view, this was proper rebuttal, even in light of the fact that Fialkowski did not take the stand, since Fialkowski was the one who put Bock on the stand and elicited testimony that Fialkowski was not at the bar. The court also provided defendants an opportunity to interview the witness before her testimony.

Kim Pittas was then called by the State in rebuttal. She identified both defendants and testified that she saw them both in the City Limits bar on the night in question. She was talking with T.S. when Bock came over to them. He tried to talk with them, but Pittas told him to go away.

Jerry Gutknecke was called by the defendants in surrebuttal. He testified that in the early morning hours of September 10, 1987, he was with defendant Fialkowski, drinking beer on a porch near his home near 34th and Western.

On cross-examination, the State attempted to impeach Gutknecke with evidence of his prior convictions. The prosecutor first asked about a conviction from March 15, 1978. When he began to question the defendant about another conviction, this one from March 23, 1979, the court called the attorneys to its chambers. The court ruled that it would strike the question and answer regarding the 1978 conviction because it was over 10 years old, and instruct the jury to disregard. Counsel for Fialkowski suggested that since there were two other convictions, the court could simply bar the State from introducing one of those convictions, rather than having to make a speech to the jury. All parties agreed to this resolution.

When cross-examination by the State resumed, the witness admitted that he had been convicted of felony theft in September 1989. He

denied having been convicted of possession of a controlled substance in June 1981, although the conviction was later entered into the record by way of stipulation. The witness also said that he had dated T.S. but she had broken up with him. He also said that the previous year, he and Fialkowski had been in a fight and Fialkowski had come to his aid.

Following closing arguments given to each jury separately, the juries retired to deliberate. Both defendants were found guilty of unlawful restraint and aggravated criminal sexual assault but not guilty of robbery. The court vacated the findings on unlawful restraint.

Post-trial motions for both defendants were denied, and both appeal.

OPINION

Defendants first contend that the State's failure to name Kim Pittas in its list of witnesses or to later inform the defense of its intention to call her as a rebuttal witness was in violation of Supreme Court Rules 412 and 415. (134 Ill. 2d Rules 412, 415.) As a result of not being informed of the identity of the rebuttal witness until immediately prior to her taking the stand, defendants contend they were unable to adequately interview the witness, to investigate what she might say, or to find another witness who could have proven Pittas' testimony incorrect. Defendants also argue that the State violated the rules of discovery in its failure to inform them of statements made by Bock to Pittas. They contend that they were prejudiced by the State's actions.

The State responds that its disclosure of the rebuttal witness was timely, since the intent to call her was not formed until defendant Bock had testified that Fialkowski was not with him at City Limits when he met T.S. Defendants dispute this contention, since defense counsel in opening arguments previewed Bock's testimony which the rebuttal witness sought to discredit. Defendants also point to the prosecutor's comments in chambers when the subject of the rebuttal witness was first brought up that she and her partner had "preliminarily pre-discussed" calling the rebuttal witness.

The rules of discovery require the State to disclose to a defendant the names of the witnesses it intends to call. (134 Ill. 2d R. 412; *People v. Fox* (1988), 177 Ill. App. 3d 602, 611, 532 N.E.2d 472.) The duty to disclose rebuttal witnesses, as with all witnesses, arises when the State has formed the intent to call such a witness. (*People v. Curtis* (1986), 141 Ill. App. 3d 827, 832, 491 N.E.2d 134.) In the case of rebuttal witnesses, however, the necessity of calling such witnesses

may not arise until after the defendant has presented his case. (*People v. Manley* (1974), 19 Ill. App. 3d 365, 371, 311 N.E.2d 593 ("[it] is obvious, however, as a practical matter, that the relevancy of the testimony of the rebuttal witness and of his statement may not be known until the State is informed of the direction of defendant's case").) As stated in *People v. Fauntleroy* (1991), 224 Ill. App. 3d 140, 162, 586 N.E.2d 292, "[t]he reason for this rule is that a prosecutor cannot know if a witness will be called in rebuttal until the defense testimony is heard." The State's intent to call the witness is the critical element. (*People v. Hanna* (1983), 120 Ill. App. 3d 602, 606, 457 N.E.2d 1352.) The parties here agree on these general principles, but dispute when the State formed its intent to call its rebuttal witness. That, however, is a dispute which we need not resolve.

■ When the State fails to make timely disclosure of a rebuttal witness, the trial court is not required to exclude the rebuttal witness' testimony. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 537, 464 N.E.2d 659; *People v. Galindo* (1981), 95 Ill. App. 3d 927, 932-33, 420 N.E.2d 773.) Exclusion of the evidence is within the sound discretion of the trial court and will be reviewed only on a showing of prejudice to the defendant. (*Fauntleroy*, 224 Ill. App. 3d at 162 ("[e]ven where there has not been strict compliance with the rule, the exclusion of the rebuttal evidence is within the sound discretion of the trial court, the exercise of which will not be reviewed absent a showing of prejudice"); *People v. Banks* (1981), 102 Ill. App. 3d 877, 881, 430 N.E.2d 602 ("[i]t is within the trial court's discretion to admit testimony of unlisted witnesses, and the exercise of that discretion will not be disturbed absent a showing by the accused of resulting prejudice or surprise"); *Hunter*, 124 Ill. App. 3d 516, 464 N.E.2d 656; *Galindo*, 95 Ill. App. 3d 927, 420 N.E.2d 773.) Defendants have not shown that they were prejudiced by the introduction of the rebuttal testimony here.

Prior to Pittas' testimony, both defendants had an opportunity to interview her. Neither defendant requested a continuance to conduct any further investigation, nor have they identified, other than in a very general fashion, anything that such an investigation might have revealed. They both cross-examined her regarding her memory of the evening in question. In addition, other witnesses had also testified to the fact that Fialkowski was with Bock at the City Limits that morning. Thus, the rebuttal witness' testimony was merely cumulative. Moreover, following Pittas' testimony, the defendants presented a surrebuttal witness to impeach the testimony of the State's rebuttal witness. He testified that he was with defendant Fialkowski on the night in question at a neighbor's house and not at the City Limits bar

as Pittas had testified. Accordingly, we do not find that defendants were prejudiced by the court's allowing the State's rebuttal witness.

We likewise find no prejudice in the State's alleged violation of discovery rules in its failure to inform defendants of the substance of Bock's statements to Pittas. While the State does have an obligation to disclose to the defense "any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements" (134 Ill. 2d R. 412(a)(ii)), there is nothing in the record to indicate that Bock ever made a statement to Pittas which arguably should have been disclosed. Pittas testified only that while she was talking with T.S. at City Limits, Bock came over to them and tried to talk to them. She did not testify to the substance of any statement made by the defendant. (*Cf. People v. Robinson* (1989), 189 Ill. App. 3d 323, 545 N.E.2d 268 (reversal required where trial court admitted into evidence statements of defendant's threats to and argument with apartment building custodian which the prosecutor had not furnished to defendant's attorney pursuant to discovery rules); *People v. DeBord* (1978), 61 Ill. App. 3d 239, 377 N.E.2d 1308 (court finds technical violation of discovery rules in State's failure to disclose statement made by defendant during telephone conversation to which statement State's witness testified at trial).) Furthermore, even if defendant did make a statement to Pittas, defendants cannot be said to have been surprised or prejudiced by the introduction at trial of such a statement since no statement by Bock was introduced at trial.

Defendants' next claim of error involves the State's alleged discovery violation in its failure to tender Officer Ptak's major crime worksheet report. Defendants urge that without this report they were not allowed to adequately prepare for the cross-examination of Ptak and, as a result, were denied their right to a fair trial. The State responds that the court properly exercised its discretion in postponing cross-examination of the officer until the defendants had an opportunity to examine the newly disclosed report. Furthermore, the State argues, defendants have not shown that they suffered any prejudice as a result of the State's failure to tender the report since it contained essentially the same information as a previously tendered report.

In *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

the prosecution." To constitute a violation of due process, a defendant must show that "(1) there was, in fact, a suppression of evidence by the prosecution after disclosure was requested by the defense; (2) the evidence suppressed was favorable to the defense; and (3) the evidence was material." *People v. Guest* (1986), 115 Ill. 2d 72, 87, 503 N.E.2d 255, citing *Moore v. Illinois* (1972), 408 U.S. 786, 794-95, 33 L. Ed. 2d 706, 713, 92 S. Ct. 2562, 2568.

■■ Our review of the record in this case convinces us that defendants were not prejudiced by the nondisclosure of the major crimes worksheet report. We reach this conclusion for two reasons. First, the defendants were given Ptak's supplementary report. This report consisted of four pages, two of which provided a detailed narrative of Ptak's investigation and of the statements made by both defendants. In contrast, the major crimes worksheet report is a two-page report and provides only brief summaries of the defendants' statements. There is nothing material in the major crimes worksheet report which is not included in the supplementary report. The trial court specifically noted that "everything on that report has been in prior reports" and defendants have not refuted that contention here.

Our second reason for concluding that no prejudice occurred here is that the defendants were given an opportunity to review the newly discovered report prior to conducting their cross-examination of Ptak. His testimony was suspended for the day, and cross-examination was postponed until the next morning.

As discussed above in regard to the rebuttal witness, the sanction to be applied in cases of discovery violations is a matter left to the discretion of the trial court. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) Where the defendant has suffered no prejudice, we need not further consider the trial court's exercise of its discretion. *People v. DeBord*, 61 Ill. App. 3d at 242 ("in absence of a showing that defendant had been prejudiced, we will not interfere with the trial court's discretion").

We turn next to defendants' contention that, during closing argument, the State impermissibly commented on Bock's post-arrest silence, in violation of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, when it said:

> "Nowhere and at no time did Tony Bock tell either Assistant State's Attorney Fischer nor did he tell Detective Ptak about [T.S.] giving money to Fialkowski to get the drugs. It is not until we hear him testify in Court that he came up with this $10, and it is not $30, it is $10."

The State argues, and defendants admit, that no objections were made to these remarks at trial. Nor were these comments raised as error in defendants' post-trial motions. Ordinarily, such failure would result in waiver of the issue on appeal (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124), a rule which applies equally to errors of constitutional dimension. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) Defendants urge, however, that we consider this issue as plain error.

■■ "The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error was of such magnitude that the defendant was denied a fair trial." (*People v. Cox* (1990), 197 Ill. App. 3d 1028, 1036, 557 N.E.2d 288.) In this case, however, neither circumstance which would require invocation of the plain error rule is met.

The evidence is not closely balanced. T.S. testified that she agreed to give an old friend and his friend a ride home from a bar but when they arrived at the trailer, she was pulled from her car by the defendants, who carried her, screaming, into the trailer. She testified that they took her clothes off of her, and one defendant held her down and attempted an act of oral sex with her while the other had vaginal intercourse with her. As a result of a struggle with the defendants, she suffered multiple bruises on her body. Her pierced earring was ripped from her ear. T.S.'s testimony was substantially corroborated by that of the doctor who treated her at the hospital and by the police officers who spoke with her following the incident. They all testified that when they spoke with her at the hospital following the attack, she was very upset and crying. They also observed her bruises and the injury to her earlobe. In addition, her torn jumpsuit was introduced at trial.

In contrast to the starkly probative evidence of defendants' guilt, we have the testimony of one defendant and a limited number of defense witnesses which was shown to be internally inconsistent and impeachable. With respect to their consent defense, both defendants told the police, and Bock testified, that T.S. had oral sex with Bock while sitting on the hood of her car, yet testimony by police indicated no disturbance of the dust covering the car. In addition, Bock's testimony that Fialkowski was not at the bar with him was inconsistent with the statement given by Fialkowski to Officer Ptak. That statement was also inconsistent with the statement Fialkowski gave to the assistant State's Attorney that he was not at the bar that night. The contention of defendants that T.S. consented to engage in sexual acts with them in the hopes of getting PCP was squarely negated by her dis-

claimer that she did not use that drug. The mere fact that T.S. may have testified that she walked over to talk to Fialkowski in the bar when she noticed him does not come close to establishing consent as defendants would urge. Approaching someone identified as an old friend from the neighborhood to talk with him in a bar is a far cry from consenting to have sex with him and/or his friend. As a result, we cannot say that the evidence here was so closely balanced as to warrant application of the plain error rule.

Moreover, there is no indication that the comments complained of constituted error, much less an error of such magnitude as to deny defendants a fair trial, since defendants in this case never invoked their right to remain silent.

The rule regarding impermissible comment on a defendant's post-arrest silence has been articulated in the United States Supreme Court case of *Doyle v. Ohio*, (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. There the Supreme Court held that since a defendant's silence after being informed of his right to remain silent is "insolubly ambiguous," and in light of the implied assurance given in the *Miranda* warnings that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (426 U.S. at 617-18, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245.) This rule has been applied where the defendant first invokes his right to remain silent. Under such circumstances, the Illinois Supreme Court has held that it would be fundamentally unfair for a prosecutor to question a defendant about his failure to make a statement after being advised of his right to remain silent. (See *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.) When, however, as in our case, a defendant has not invoked his right to remain silent but has given a statement to the authorities, the same concerns are not present. The statement given is not "insolubly ambiguous" nor can it be said that defendant is relying on the assurance that his silence will not be used. Comment on inconsistencies between an earlier statement and testimony given at trial is not comment on silence, but rather constitutes impeachment by prior inconsistent statements. (See *People v. Ridley* (1990), 199 Ill. App. 3d 487, 493, 557 N.E.2d 378 ("[a]lthough the defendant's first version of events involves silence insofar as it omits facts included in the trial version, use of that silence for impeachment is permissible 'because a defendant who voluntarily speaks after receiving *Miranda* warnings had not been induced to remain silent' "), quoting *Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182; see also *People v. Pea-*

*gram* (1988), 124 Ill. 2d 166, 176, 529 N.E.2d 506 ("[p]rosecutorial questions and remarks concerning a defendant's post-arrest silence are generally improper [citation], with exception being made for impeaching the defendant's testimony with a prior inconsistent statement").) Here, both defendants gave statements to the police and to the assistant State's Attorney following their arrests. There are no indications that either defendant invoked his right to remain silent. In their statements, neither defendant mentioned the money which Bock testified T.S. gave Fialkowski for drugs. Thus the comments made here were not improper comments on defendant's silence, but instead were permissible comment on a prior inconsistent statement.

Even if these remarks were erroneous and the error was of constitutional dimension, we would find that the error was harmless beyond a reasonable doubt. (*People v. Green* (1979), 74 Ill. 2d 444, 451-52, 386 N.E.2d 272 (" '[b]efore a Federal constitutional error can be held harmless, the court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction' "), quoting *People v. Knippenberg* (1977), 66 Ill. 2d 276, 287, 362 N.E.2d 681).) As discussed above in regard to the plain error rule, there was significant evidence of defendants' guilt on the aggravated criminal sexual assault charge. Moreover, the comments here involved prior inconsistent statements with respect to the amount of money "received" from the victim related largely to the charge of robbery, a charge of which defendants were found not guilty. Based on these considerations, there is no reasonable possibility that they contributed to the convictions on the sexual assault charge.

■ We turn now to defendants' contention that the trial court erred in denying them the opportunity to introduce evidence or to cross-examine T.S. as to previous complaints of rape allegedly made by her. Apparently, a hearing was held before trial on a motion *in limine* by the State to bar reference by the defendants to a counselor's report which contained a statement that the complainant had a family history of rape. We say "apparently" because the record on appeal contains no transcript of this hearing, nor is the counselor's report included. Defendants claim that they have tried but have been unsuccessful in obtaining the transcript. The only reference in the record to this evidence which was excluded comes in Bock's post-trial motion and at the hearing on that motion. According to the record before us, it was at the hearing on the post-trial motion that Bock's counsel first argued that the evidence should have been admitted to show T.S.'s propensity to make false allegations of rape. (There is no record of any such argument by Fialkowski, nor did he raise this mat-

ter in his post-trial motion.) The trial court, however, stopped that line of argument by Bock's counsel, stating:

"And the reason I'm going to stop you is that at no time did you proffer that argument before me at the time that you had this matter before me. The Court is well aware of that law, and I am going to stop you right in your tracks because you never mentioned that one iota. So forget about that argument here because you never brought it up before the Court at all. This Court is well aware of that type of law. That was not argued before me."

Failure to preserve the record on this issue would be grounds to deny defendant's claim. It is the responsibility of a party to present a record sufficient to support his claim. (*People v. Smith* (1985), 106 Ill. 2d 327, 334-35, 478 N.E.2d 357.) Assuming that such prior complaints of rape did occur, in the absence of a record of the hearing or a copy of the report, we are unable to determine whether the alleged prior accusations were determined to be false, and thus could conceivably be relevant to T.S.'s credibility. See *People v. Alexander* (1983), 116 Ill. App. 3d 855, 860-61, 452 N.E.2d 591 (court finds that prior accusations of rape which were not proven false were "inconclusive on the issue of the complainant's credibility" and should be "excluded as irrelevant").

The scope of cross-examination and the admissibility of evidence is within the discretion of the trial court. (*People v. Gorney* (1985), 107 Ill. 2d 53, 59, 481 N.E.2d 673.) In the absence of a sufficient record, we have no basis for determining that the trial court has abused its discretion in disallowing this evidence, and must conclude that no abuse has occurred. (*People v. Edwards* (1978), 74 Ill. 2d 1, 7, 383 N.E.2d 944 ("[w]here the record is insufficient or does not demonstrate the alleged error, the reviewing court must refrain from supposition and decide accordingly").) Since we are otherwise precluded from considering the matter because of the insufficiency of the record, we need not consider whether such impeachment evidence can be presented under the Illinois rape shield statute (Ill. Rev. Stat. 1987, ch. 38, par. 115—7). *Cf. Gorney*, 107 Ill. 2d at 61 (where the court concluded, albeit without any overt consideration of the rape shield statute, that "[e]vidence of prior false accusations of rape by the victim may be admissible").

Defendants' next assertion of error concerns jury instructions. They contend that their juries were not instructed on the essential elements of the offense with which they were charged and found guilty

since there was no instruction regarding the mental state required for the offense of aggravated criminal sexual assault.

Initially, we agree with the State's contention that defendants have waived this issue for review by their failure to object at trial to the instructions given or to tender their own instruction to correct the alleged error, and the failure to raise the issue in their post-trial motions. (See *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180-81, 415 N.E.2d 1027 ("It is well established that the failure to object at trial to an asserted error in jury instructions waives the question. [Citations.] This court has also repeatedly recognized that no party may raise on appeal the failure to give an instruction unless he tendered it at trial. [Citations.] Our decisions have also emphasized that issues not raised in a post-trial motion are effectively waived for appellate review").) Defendants urge, however, that the error here in failing to incorporate a necessary element of the charge is "so grave and fundamental" that the plain error rule should be applied.

█ We agree that the waiver rule will not be applied where fundamental fairness requires that the instruction be corrected. (See *Tannenbaum*, 82 Ill. 2d at 182 ("A limited exception to the waiver rule is contained in Rule 451(c) which permits the review of 'substantial defects' in instructions 'if the interests of justice require.' [Citations.] However, this court has limited that exception 'to correct "grave errors" [citation], or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed [citations]' "); see also *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Burns* (1986), 144 Ill. App. 3d 345, 355-56, 494 N.E.2d 872.) Having already determined that the evidence here was not closely balanced, we need only consider whether the alleged error constituted plain error in denying defendant a fair trial. As shall be discussed below, we reject the contention that the defendant is entitled to a mental state instruction under the general intent statute setting forth the offense of aggravated criminal sexual assault. However, even if we adopted the position that a defendant would be entitled to a mental state instruction, the failure of the court to provide such an instruction where not tendered by the defendant would not rise to the level of "grave error" or fundamental fairness so long as the jury was instructed on the statutory elements of the offense. (See *People v. Avant* (1989), 178 Ill. App. 3d 139, 145-49, 532 N.E.2d 1141 (although failure to correctly inform the jury of the essential elements of the offense charged is reason to invoke the plain error rule, instruction which informs the jury of the elements of the offense as it is defined by statute is "sufficient to inform the jury of the essential elements");

*People v. Anderson* (1981), 93 Ill. App. 3d 646, 654, 417 N.E.2d 663 ("court's failure to instruct the jury on its own motion as to a mental state not specifically required by the statute defining an offense" held not "sufficiently serious to warrant relaxation of the strict waiver rule"); but see *People v. Grant* (1981), 101 Ill. App. 3d 43, 47, 427 N.E.2d 810 (review allowed in spite of waiver where "the alleged error in the instructions concerns the absence of one of the essential elements of the crimes charged"), distinguished in *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139.

Moreover, as noted earlier, we conclude that the instructions given here were proper.

The appellate courts of this State have overwhelmingly held that the jury instructions for aggravated criminal sexual assault need not set forth a specific mental state. See, *e.g., People v. Smith* (1991), 209 Ill. App. 3d 1043, 568 N.E.2d 482; *People v. Burton* (1990), 201 Ill. App. 3d 116, 558 N.E.2d 1369; *People v. Sommerville* (1990), 193 Ill. App. 3d 161, 549 N.E.2d 1315; *People v. Avila* (1989), 180 Ill. App. 3d 345, 535 N.E.2d 1027; *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397; *People v. Ortiz* (1987), 155 Ill. App. 3d 786, 508 N.E.2d 490.

As noted, the statute defining the offense of aggravated criminal sexual assault does not specify a mental state (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a) ("[t]he accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault" and one of five aggravating factors existed)). Criminal sexual assault is defined by section 12—13 as "an act of sexual penetration by the use of force or threat of force." (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1).) Aggravated criminal sexual assault is a general intent crime, and as such, the requisite mental state ordinarily follows the prohibited conduct. *Burton*, 201 Ill. App. 3d at 121 ("the hallmark of a general intent crime was that the mental state required ordinarily followed the element of the conduct prohibited"); *Talley*, 177 Ill. App. 3d at 173 ("[i]t is obvious that the commission of the general intent crimes of criminal sexual assault, robbery, or armed robbery, as defined by the statutes, necessarily implies an intent or knowledge").

Defendants acknowledge that prior cases have held with uniformity that no specific mental state instruction is required for the general intent crime of aggravated criminal sexual assault where the mental state is inferred. They argue, however, that a different result is warranted following the supreme court's decision in *People v. Terrell* (1989), 132 Ill. 2d 178, 547 N.E.2d 145, wherein the supreme court construed the offense of aggravated criminal sexual assault as requir-

ing a mental state of intent or knowledge. (*Terrell*, 132 Ill. 2d at 209 ("aggravated criminal sexual assault *** require[s] an intentional or knowing act by the accused").) Defendants now urge that an instruction as to those mental states should be required in the same manner as if the statute defining the offense had specified the requisite mental state. We disagree.

The effect of *Terrell* on the prior law and arguments similar to the ones made here were rejected in *Burton*. The *Burton* court noted that our supreme court has recognized "the difference between (a) mental states set forth in very specific language in statutes creating offenses or generally recognized to be very specific, and (b) mental states implied by section 4—3 of the Code to be either intent, knowledge, recklessness, or negligence." (*Burton*, 201 Ill. App. 3d at 121.) In concluding that the offense of aggravated criminal sexual assault remains a general intent crime whose mental state is implied by the act itself and does not require an instruction on mental state, notwithstanding the supreme court's decision in *Terrell*, the court reasoned:

> "While an adult caring for and bathing a small child might unintentionally and unknowingly place a finger in such a position as to create the slight penetration into the vagina or anus of a child described in section 12—12(f) [citation] of the Code, the definition of aggravated criminal sexual assault would surely be given a commonsense interpretation to make such conduct innocent. Absent that type of situation, the *Terrell* opinion makes clear that the mental state required for aggravated criminal sexual assault based on such penetration would naturally flow from the commission of the prohibited acts.
>
> We conclude *Terrell* does not require us to change our ruling in regard to the inclusion in instructions of the general criminal mental states implied by section 4—3 of the Code." (*Burton*, 201 Ill. App. 3d at 121-22.)

We also note that in *Smith*, decided after *Terrell*, the court affirmed the holding of *Burton* "that the jury need not be instructed on the mental state implied to be an element of the offense of aggravated criminal sexual assault." (*Smith*, 209 Ill. App. 3d at 1061.) Defendants have offered no compelling reason to depart from the precedent cited above. Accordingly, we find no error in the instructions given here.

Defendants' next contention is that they were not proven guilty beyond a reasonable doubt. Specifically, they argue that since T.S. was the only occurrence witness presented by the State and since they introduced evidence to the contrary, the State failed to prove that she did not consent to have sexual relations with them. See *People v.*

*Haywood* (1987), 118 Ill. 2d 263, 274, 515 N.E.2d 45 ("if the accused raises a question of the consent, the State has a burden of proof beyond reasonable doubt on the issue of consent").

The standard to be applied in reviewing a conviction for aggravated criminal sexual assault is the same that is applied in all criminal cases, namely, whether when the evidence is viewed in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the crime beyond a reasonable doubt. (*People v. Bell* (1991), 217 Ill. App. 3d 985, 577 N.E.2d 1228; *People v. Hart* (1991), 214 Ill. App. 3d 512, 573 N.E.2d 1288.) It is for the trier of fact to resolve factual disputes and to assess credibility, and we will not reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt of defendants' guilt remains. *People v. Roy* (1990), 201 Ill. App. 3d 166, 558 N.E.2d 1208.

■ We have previously analyzed the evidence in detail to determine whether the evidence was close with respect to the plain error rule and whether certain errors, if committed, would have been harmless beyond a reasonable doubt. In that context, we have found the evidence supporting the guilty judgments entered with respect to both defendants to be amply sufficient and based on the sufficiency of the evidence we have found certain proposed errors to be harmless beyond a reasonable doubt. Based upon that review and for the same reasons indicated earlier in connection with that determination, it is *a fortiori* clear that this evidence, when viewed in the light most favorable to the prosecution, would sustain the determination of any rational trier of fact that the elements of the crime were proven beyond a reasonable doubt.

Defendants' contention that their convictions should be reversed because the complainant's testimony was not clear and convincing and was uncorroborated is an incorrect statement of the law. The rule requiring such clear and convincing testimony or corroborative evidence in cases of sexual assault has been held invalid and replaced by the standard of review applicable to all criminal cases as cited above. (See *People v. Roy*, 201 Ill. App. 3d 166, 558 N.E.2d 1208.) Moreover, as our review of the evidence has indicated, there was ample corroboration of her testimony. Medical and police personnel testified that she was emotionally upset and crying following the incident. They also testified to her bruises and the injury to her earlobe. In addition, her torn jumpsuit was introduced at trial. See *People v. Douglas* (1989), 183 Ill. App. 3d 241, 538 N.E.2d 1335 (complainant's testimony corroborated by testimony of police and medical personnel concerning her injuries and emotional state).

Next, we address defendant Fialkowski's contention that by conducting a joint trial before separate juries, he was denied a fair trial. He argues that since the overwhelming volume of evidence in this case was against Bock only, the presence of his jury during the introduction of this evidence resulted in prejudice to him.

■ The State argues, and we agree, that Fialkowski has waived this issue. Although Bock filed a pretrial motion for severance, Fialkowski failed to do so. A defendant who fails to file a motion for severance lacks standing to assert on appeal reversible error in the denial of a codefendant's motion. (*People v. Wilhoyt* (1980), 87 Ill. App. 3d 539, 409 N.E.2d 162.) Fialkowski also failed to raise the issue in his post-trial motion. Moreover, throughout the trial he acquiesced in the conduct which he now claims was prejudicial to him. Prior to the start of trial and again prior to the defendants presenting their cases, all parties agreed to the procedure to be followed. Fialkowski's attorney indicated that he had no problem with his jury hearing evidence which was common to both defendants. Furthermore, Fialkowski was the one who called Bock as a witness.

Even had the issue not been waived, we would find no error in this case. A decision to grant separate trials is within the discretion of the trial court, and its determination will not be disturbed absent an abuse of that discretion. (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247.) The general rule is that defendants jointly indicted are to be jointly tried unless fairness to one requires separate trials to avoid prejudice. (*People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349.) A defendant who desires a separate trial must demonstrate how he will be prejudiced by a joint trial. (*People v. Daugherty* (1984), 102 Ill. 2d 533, 468 N.E.2d 969.) Severance will be granted when the defendants' defenses are so antagonistic that one of the defendants cannot receive a fair trial. (*Bean*, 109 Ill. 2d 80, 485 N.E.2d 349; *Daugherty*, 102 Ill. 2d 533, 468 N.E.2d 969; *People v. Stamos* (1991), 214 Ill. App. 3d 895, 574 N.E.2d 184.) Severance may also be granted when hearsay admissions of a codefendant implicate the defendant seeking severance, since the latter may be denied his constitutional right to confrontation if the codefendant does not testify. (*Daugherty*, 102 Ill. 2d 533, 468 N.E.2d 969; *Stamos*, 214 Ill. App. 3d 895, 574 N.E.2d 184.) Neither of these factors is present in the instant case.

The defendants did not present antagonistic defenses. Both defendants presented the same defense, namely, that T.S. had consented to have sex. In addition, Fialkowski was not denied his constitutional right to confrontation because Bock did in fact testify. Thus, he had full opportunity to question Bock about any statements made

which might have implicated Fialkowski. Fialkowski took full advantage of this opportunity, eliciting testimony from Bock that Fialkowski was not present at City Limits on the morning in question.

To the extent that Fialkowski argues that this issue was not waived due to ineffective assistance of counsel in failing to move for severance, an attorney's failure to pursue a motion to sever cannot amount to ineffective assistance where, even if presented, the motion would have been unsuccessful. (*People v. Morrow* (1982), 104 Ill. App. 3d 995, 433 N.E.2d 985.) As discussed above, such would have been the result here.

■■ Finally, defendants raise a number of miscellaneous individual instances of allegedly improper examination and impermissible comment. These include a comment in opening argument that the juries would hear testimony concerning statements made by both defendants when, in fact, each jury would hear of statements made only by one defendant; improper use of suggestive and leading questions in examination of the complainant; admission of hearsay evidence during examination of the complainant as to what Dilts said when he came to the door of the trailer; improper redirect examination of the crime lab technician as to whether defense attorneys ever request that tests be performed; improper impeachment of Bock concerning what he had said to the assistant State's Attorney; improper questioning of the State's rebuttal witness regarding her recall of the night in question; improper impeachment of defendants' surrebuttal witness by means of convictions more than 10 years old; improper impeachment of the surrebutal witness to establish bias by showing that on a prior occasion the witness was involved in an altercation in which Fialkowski came to his aid; and several comments made in closing arguments which defendants contend misstated the evidence presented.

Defendants concede as to all of these that they were not included in post-trial motions with the exception of the allegedly improper cross-examination of the crime lab technician which was included in Bock's post-trial motion. In addition, with the exception of the allegedly improper impeachment of Bock, defendants have cited no legal authority in support of their contention that error occurred.

Failure to include an issue in a post-trial motion will result in waiver of the issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Moreover, lack of citation of legal authority in briefs before this court constitutes a failure to comply with Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), and will also result in waiver. (*People v. Hood* (1991), 210 Ill. App. 3d 743, 746, 569 N.E.2d 228 ("[c]ontentions supported by some argument but absolutely no au-

thority do not meet the requirements of Supreme Court Rule 341(e)(7)"); *People v. Barlow* (1989) 188 Ill. App. 3d 393, 405, 544 N.E.2d 947 ("failure to provide this court with any legal argument or citation to supporting authority waives this issue for review").) Accordingly, these allegations of error have been waived.

Moreover, none of these alleged errors warrant invocation of the plain error rule since, as can be perceived on their face, even if erroneous, they would fail to rise to the level of being prejudicial, since they all involve individual instances of relatively minor significance, and as previously demonstrated, the evidence was very ample to establish defendants' guilt.

Moreover, we also note that with respect to the contention concerning the testimony by the crime lab technician, the State's allegedly improper examination was invited by the defense. On cross-examination, defense counsel asked the witness whether she had performed fingernail scraping tests or pubic hair comparison tests. She answered that she had not since she had not received a request to do those tests. She testified that such a request would come from the State's Attorney's office. On redirect, then, she said that they also get requests from defense attorneys. It is clear that the question and answer on redirect were an invited response to the defendants' questions concerning the source of requests for testing to be done by the crime laboratory. As a result, they were not error. See *People v. Shaw*, 133 Ill. App. 3d 391, 403, 478 N.E.2d 1142 ("[i]t is well established, however, that a defendant cannot complain on appeal about testimony which he procured or invited"); see also *People v. Bolla* (1983), 114 Ill. App. 3d 442, 448 N.E.2d 996.

Moreover, we disagree with defendants' contention that error occurred in the State's cross-examination of their surrebuttal witness. As to the impeachment by a conviction which was more than 10 years old, the record clearly shows that the agreement as to how to handle the situation was based upon a suggestion made by defense counsel. Furthermore, even if the agreement was not strictly adhered to, we would find any prejudice suffered by one erroneously admitted conviction to be minimal, where other convictions were properly admitted. (See *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248 (improperly admitted prior conviction not grounds for reversal where defendants were not prejudiced by its admission).) As to defendants' argument that cross-examination regarding the surrebuttal witness' prior altercation was irrelevant, we simply note that the scope of cross-examination rests within the discretion of the trial judge. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 552 N.E.2d 726.) Evidence of a

witness' bias is always relevant. (*People v. Rainone* (1988), 176 Ill. App. 3d 35, 40, 530 N.E.2d 1026 ("[a] witness always may be cross-examined concerning those matters which would tend to show bias").) We therefore find no abuse of discretion here.

Accordingly, for all the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY and McNULTY, JJ., concur.